RECEIVED

SEP 2 2 2011

TONY R. MOORE, CLERK
BY: _____ DEPUTY

### UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

GREGORY WILLIS, ET AL.

versus                                      CIVIL ACTION NO. 09-2103
                                            JUDGE TOM STAGG
CLECO CORPORATION

### MEMORANDUM RULING

Before the court are motions for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all claims alleged by the plaintiffs, Gregory and Vanda Willis. See Record Documents 35 and 36. Based on the following, Cleco's motions for summary judgment are **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

Gregory Willis ("Mr. Willis") and Vanda Willis ("Mrs. Willis") (sometimes referred to as "the Willises"), along with ten other current and former African-American employees of Cleco, brought this action against Cleco, alleging race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; Section 1981 of the United States Code, 42 U.S.C. §

1

1981; the Louisiana Employment Discrimination Law, La. R.S. 21:301, et. seq.; and the Louisiana Commission on Human Rights, La. R.S. 51:2231.[1]  Cleco filed these motions for summary judgment against the Willises.[2]

**A.    Mr. Willis.**

Mr. Willis began working with Cleco in December of 2000 as a Human Resources Representative for its customer service offices, and he was promoted to Senior Human Resources Representative in August of 2003.  As a Senior Human Resources  Representative,  Mr.  Willis's  responsibilities  included  "employee relations, staffing, recruiting, assisting in writing job descriptions, participating in job fairs, participating in employee orientations, investigating incidents of claimed misconduct  among  Cleco  employees  and  providing  advice  to  Cleco  employees related to human resource and career matters."  Record Document 35, Affidavit of Manager of Human Resources  Ed Taylor ("Taylor") at 1.

In  March  of  2007,  Mr.  Willis  reported  to  Jeff  Hall,  the  Chief  Diversity Officer, and George Bausewine, the Senior Vice President of Corporate Services,

---

[1]Mrs. Willis concedes that she "failed to exhaust her administrative remedies under Title VII and [her] Title VII claims are not before this court."  Record Document 56 at 13.  Therefore, Cleco is entitled to summary judgment as to her Title VII claims.  The parties do not dispute that Mr. Willis exhausted his administrative remedies by filing a timely claim with the Equal Employment Opportunity Commission ("EEOC").

[2]Cleco has filed separate motions for summary judgment against the other plaintiffs.  See Record Documents 37, 38, 39, 40 and 41.

that he had overheard a conversation between Robbyn Cooper ("Cooper"), a Communications Representative, and John Melancon, the General Manager of Human Resources and Safety, in which Cooper made racially-offensive comments. See Record Document 35, Letter from Mr. Willis. Mr. Willis was not a party to the conversation, but overheard it from outside Cooper's office. Mr. Willis claims that, as a result of his report, persons at Cleco retaliated against him.

Mr. Willis was fired on February 4, 2009. He alleges that he was wrongfully terminated because of his race and in retaliation for his report in 2007. Cleco claims Mr. Willis's employment was terminated because of his actions related to a phone call with a fellow Cleco employee, Franklin Sylvia ("Sylvia"), on January 21, 2009. On January 21, 2009, Sylvia received a phone call from his brother-in-law and close friend of Mr. Willis, Tracy Holmes ("Holmes"). During the conversation, Holmes asked Sylvia if he had turned in a co-worker, Charles Spears, for sleeping in their training class. See Record Document 35, Affidavit of Sylvia at 1. Holmes explained that Mr. Willis had told him that Sylvia had turned in the co-worker for sleeping in class. See id. Sylvia had not done so. See id. at 3. Concerned, Sylvia called his Cleco instructor, Bryan Phillips ("Phillips"), for advice on the situation. Phillips confirmed that Sylvia had not turned in the co-

3

worker for sleeping.[3]  See id. at 1, Affidavit of Phillips at 1.  Sylvia then called

Holmes and requested that he contact Mr. Willis to clear up the matter, but Holmes

suggested Sylvia call him Mr. Willis personally.

Thereafter, Sylvia called Mr. Willis.   The phone conversation lasted

approximately thirty-five minutes.  See Record Document 35, Affidavit of Sylvia

at 2.  According to Sylvia, Mr. Willis asked Sylvia "if [he] had turned in Spears for

sleeping; if [he] was telling people [he] was Caucasian instead of African-

American;[4] if [he] had rebel flags on [his] truck; if [he] had thrown away an

invitation to the American Association of Blacks in Energy Christmas party and

refused to go, claiming that [he] was Caucasian; and, if [he] hung around with

Caucasian employees more than African-American employees."  Id.  Mr. Willis

further instructed Sylvia "to not be ashamed of being African-American; to not try

and be something that [he] was not; to hang around African-American employees

more; and to not discuss [this] conversation with anyone else."  Id.  Sylvia,

---

[3]Sylvia and other Cleco employees had discussed that an employee was
sleeping in class in Phillips's presence.  See Record Document 35, Affidavit of
Sylvia at 1-2, Affidavit of Phillips at 1.  When Phillips asked Sylvia who was
sleeping, Sylvia did not answer.  See id.  Another employee mouthed "Chuck,"
referring to Charles Spears.  See id.  Spears told Mr. Willis he had overheard a
conversation between Phillips and Sylvia, in which his name was mentioned in
connection with sleeping in class.  See Record Document 35, Affidavit of Spears.

[4]Sylvia is of mixed race.  His father is African-American and his mother is
Caucasian.  See Record Document 35, Affidavit of Sylvia.

4

concerned about the conversation with Mr. Willis and his future employment at Cleco, called Phillips and informed him of the conversation. See id. at 3.

The following day, January 22, 2009, Sylvia and Phillips met to discuss the phone conversation with Mr. Willis and spoke with Sylvia's supervisor, David Debona ("Debona"). See id. On January 30, 2009, Debona and Sylvia met with Taylor, a Manager of Human Resources. See id. Thereafter, on February 2, 2009, Taylor and John Melancon ("Melancon"), the General Manager of Human Resources and Safety, met with Mr. Willis and informed him of Sylvia's accusations regarding the phone conversation. See Record Document 35, Affidavit of Taylor at 3, Affidavit of Melancon at 2. Mr. Willis denied having spoken with Sylvia on January 21, 2009. See id. The next day, Taylor and Melancon met with Sylvia again, and Sylvia showed them his cell phone indicating the call he made to Mr. Willis on January 21, 2009. See id. Taylor and Melancon met again with Mr. Willis, and Mr. Willis continued to deny Sylvia's accusations. See id. Mr. Willis offered that maybe his four-year-old son had answered the phone and then set the phone down. Finally, all four men -- Taylor, Melancon, Sylvia, and Mr. Willis -- met to discuss the phone conversation. Mr. Willis accused Sylvia of being a liar and the meeting ended. See id. Sylvia provided Taylor and Melancon with his cell phone records, which showed his calls to Holmes, Phillips, and Mr. Willis on

5

January 21, 2009.  See id.  Phillips also confirmed for Taylor that he had spoken with Sylvia twice on January 29, 2009.  See Record Document 35, Affidavit of Phillips at 2.

As previously mentioned, Mr. Willis's employment was terminated on February 4, 2009.  According to Cleco, Taylor and Melancon found Sylvia's version of the events the most credible, and fired Mr. Willis for revealing allegations regarding Sylvia to a non-Cleco employee, Holmes; making inappropriate and offensive racial comments; and lying about his actions when questioned.  See Record Document 35, Affidavit of Taylor at 4, Affidavit of Melancon at 3.  Cleco maintains that, while Sylvia was concerned for his job, Mr. Willis was not terminated for threatening Sylvia's employment.  See id.  Mr. Willis filed a claim with the Equal Employment Opportunity Commission ("EEOC") in April of 2009.

In addition to wrongful termination, Mr. Willis alleges that Cleco discriminated and retaliated against him because of his race by denying him the opportunity to attend diversity conferences; requiring him to write activity reports following conferences; issuing him a written disciplinary warning for sending an email to Cleco employees revealing the health information of a fellow employee's

6

ill son; and placing him on a work improvement plan.[5]  See Record Document 1 and 59.  Cleco maintains that Mr. Willis's claims are without merit.

**B.    Mrs. Willis.**

Mrs. Willis began working for Cleco in 1998 as a rate analyst.  She is currently a Senior Credit Representative in the Customer Systems and Credit Department.  In this position, she is responsible for "setting up deferred payment arrangements for customers, which essentially allows a customer to pay an outstanding balance on his account over a longer period of time."   Record Document 23, Affidavit of Mrs. Willis's supervisor, Gary Carter ("Carter").  Mrs. Willis claims she was denied a promotion to Regulatory Analyst in 2004,[6] to

---

[5]Mr. Willis also alleges that Cleco discriminated and retaliated against him by refusing to pay him his bonus for 2008.  See Record Document 1.  In its motion, Cleco provides evidence that, under Cleco's Employee Incentive Plan, an employee who is discharged for cause between the year-end and the payout of the bonus is not entitled to receive a bonus.  See Record Document 35, Employee Incentive Plan.  Mr. Willis was fired on February 4, 2009, prior to the bonus payout in March of 2009.  Cleco has met its summary judgment burden as to Mr. Willis's bonus claim and Mr. Willis has failed to produce any evidence to counter Cleco's arguments.  Based on the arguments and evidence before the court, the court finds that Cleco is entitled to summary judgment as to Mr. Willis's bonus claim.  Mr. Willis further alleges that Cleco discriminated and retaliated against him by falsely accusing his wife and employee of Cleco of violating company policy.  See Record Document 1 and 59.  As Cleco did not move for summary judgment on this claim, the court does not address it.

[6]It is not clear from the complaint whether Mrs. Willis applied for this position or not.  The complaint states the following: "When Mrs. Willis complained to Management about the discriminatory treatment she was told that she did not have enough experience.  She was denied promotion [sic] because of her race.  Yet, in 2004 a Regulatory Analyst position was given to a white female

7

Financial Accountant in 2005, and to Tax Accountant in 2007.  See Record Documents 1 and 5.  She maintains that she was denied these positions because of her race and they were instead given to white females. See id.

In October of 2009, Mrs. Willis was suspended for five days without pay. She claims she was suspended because of her race and in retaliation for her husband's report to management in 2007 and his EEOC claim in April of 2009. Cleco maintains that Mrs. Willis was suspended because she violated company policy by working on the account of her tenant and removing her tenant's account from the disconnection list twice without following protocol.

Mrs. Willis owns rental property in Pineville, Louisiana, which she was renting to Stephanie and Johnny Stroud ("the Strouds") in 2009.  In June of 2009, the Strouds reestablished electric service with Cleco and Mrs. Willis was listed as the landlord on the account.  See Record Document 36, Deposition of Mrs. Willis at 47-48.  The Strouds had an outstanding balance, so Mrs. Willis created a deferred pay arrangement for them, as was within her typical job duties.  See id., Deposition of Mrs. Willis at 45.  In August and September of 2009, the Strouds were issued billing statements stating their account was past due and their service

---

who had only recently graduated from college." Record Document 5. For the purposes of this motion, the court will construe the complaint to allege a failure to promote claim as to the Regulatory Analyst position.

8

would be disconnected if payment was not received. See id., Deposition of Mrs. Willis at 60-61, Stroud Billing Statement. In both August and September, Johnny Stroud requested more time to pay the balance. See id., Deposition of Mrs. Willis at 45-48. Although she told him she did not want to work on his account, Mrs. Willis placed a temporary hold on the account, removing it from the disconnection list for up to thirty days. See id., Deposition of Mrs. Willis at 46-49, 54-55. Mrs. Willis did not use the Credit Extension Process, require payment, or make notes in the system. See Record Document 36, Affidavit of Carter. As of October 2, 2009, the Strouds owed Cleco $1,530.52 for the months of June through September. See Record Document 36, Stroud Billing Statement.

On Tuesday, October 13, 2009, Johnny Stroud called Cleco's Call Center regarding his account. See Record Document 36, Affidavit of Carter. At that time, Mrs. Willis's supervisor, Gary Carter ("Carter"), reviewed the Strouds' account history and discovered Mrs. Willis had been working on the account. On Thursday, October 15, 2009, Carter and Jeff Ryan ("Ryan"), a Human Resources Representative, met with Mrs. Willis to discuss the Strouds' account. The next day, Carter, Ryan, and Cleco's Senior Attorney met to discuss the situation. Mrs. Willis was informed that she was being suspended for five days on the following Monday, October 19, 2009. See id., Affidavit of Carter.

9

Mrs. Willis's suspension memo stated that she being suspended without pay for violating several policy procedures. See Record Document 36, Disciplinary Memo for Mrs. Willis. First, as the owner of the house, she should not have been working on the Strouds' account, even though the account was not in her name. Second, she should not have removed the Strouds from the disconnection list without requiring payment. See id., Disciplinary Memo for Mrs. Willis.

Cleco's Customer Care Policy provides that "[n]o employee shall make changes to his or her own records or the records of relatives" and threatens "the most severe discipline, up to and including dismissal" for doing so. Record Document 36, Customer Care Policy. The Policy also mandates that a supervisor or Lead handle credit extensions for fellow employees. Cleco's policy on deferred agreements provides that, for a reestablished customer on a deferred pay arrangement like the Strouds, the minimum monthly payment is $50, unless otherwise authorized by a supervisor. See Record Document 36, Deferred Agreements Policy. Mrs. Willis did not require the Strouds to make a payment on either occasion.

Additionally, Carter explained that "proper practice would have been to use the Credit Extension Process, which contains restrictions for when a customer is permitted to be removed from the DNP (disconnection) list," although he could not

point to a particular policy requiring this practice. Record Document 36, Affidavit of Carter; see Record Document 56, Deposition of Carter at 70. He further states that the customer service representative is required to make notes in the system. Mrs. Willis does not dispute that she did not use the Credit Extension Process or make any notes in the system. See Record Document 56. She contends, however, there is no proper practice that requires using the Credit Extension Process.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts

---

[7]The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

showing that there is a genuine [dispute] for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. <u>See Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Failure To Promote.**

Mrs. Willis claims that Cleco failed to promote her in 2004, 2005, and 2007 because of her race, in violation of 42 U.S.C. § 1981 and the Louisiana Employment Discrimination Law, La. R.S. 23:301. <u>See</u> Record Documents 1 and 5. Cleco argues that Mrs. Willis's section 1981 and Louisiana law claims are prescribed under Louisiana's one-year prescriptive period. <u>See</u> Record Document 39. Mrs. Willis maintains that her 2005 and 2007 promotion claims, filed pursuant to section 1981, are not prescribed. <u>See</u> Record Document 56. She abandons her state law claims and her section 1981 claim based on the 2004 promotion.[8]

---

[8]The prescriptive period for employment discrimination claims in Louisiana is one year. <u>See</u> La. R.S. 23:303(D); <u>Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.</u>, 579 F.3d 546, 552 (5th Cir. 2009). She filed this action on December 11, 2009. <u>See</u> Record Document 1. None of her promotion claims

1.     **Section 1981.**

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

---

occurred within the one-year period and her claims under Louisiana law are clearly prescribed. Additionally, her 2004 promotion claim does not fall within either the one-year state prescriptive period or the four-year federal statute of limitations. Thus, her section 1981 claim based on the 2004 promotion also fails.

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id., at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one-year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

14

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies.   Police Assoc. of New Orleans, 100 F.3d at 1170-71; see Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

The court finds that genuine disputes of material fact remain as to the nature of the 2005 and 2007 promotions. There is no evidence in the summary judgment record to determine whether the four-year or the one-year statute of limitations

applies.  Cleco relies solely on its assertion that a one-year statute of limitations applies and makes no substantive argument why these claims should be dismissed. See Record Document 56.  As noted above, determining the applicable statute of limitations for a failure to promote claim is a fact intensive inquiry.  Accordingly, the court finds that a factual dispute remains and Cleco's motion for summary judgment as to Mrs. Willis's 2005 and 2007 failure to promote claims is denied.

**C.     Race Discrimination And Retaliation.**

The Willises allege racial discrimination and retaliation by Cleco in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; Section 1981 of the United States Code, 42 U.S.C. § 1981; the Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq.;[9] and the Louisiana Commission on Human Rights, La. R.S. 51:2256.[10]  Title VII of the Civil Rights

---

[9]Cleco argues that Mrs. Willis did not comply with the notice requirement of Louisiana Revised Statute 23:303(C) and her race discrimination and retaliation claims under Louisiana law must fail.  The court finds, however, that Mrs. Willis did comply with the notice requirement.  Her attorney submitted a copy of the amended complaint, including the state law claims, to Cleco on November 30, 2009.  See Record Document 56, Affidavit of Attorney Bridget Brown.  Mrs. Willis filed her federal claims on December 11, 2009.  See Record Document 1. On January 26, 2010, more than thirty days after the November notice, she amended the complaint to include her state law claims.  See Record Document 5. The court finds that Mrs. Willis complied with the notice requirement and summary judgment is denied as to this issue.

[10]Claims of employment discrimination brought pursuant to 42 U.S.C. § 1981, La. R.S. 23:301, et seq., and La. R.S. 51:2256 are analyzed under the same standards as Title VII claims.  See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir.

16

Act of 1964, 42 U.S.C. § 2000e, et seq., provides that "[i]t shall be an unlawful employment practice for an employer--(1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).   Title VII also makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

For cases of discrimination and retaliation based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.[11]  See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

---

2007). The court will therefore address the Willises' federal and state claims under only the applicable federal precedents.

[11]"An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005). The Willises do not allege that they possess direct evidence in support of their race discrimination and retaliation claims. See Record Document 59; see also Jones, 427 F.3d at 993 (providing descriptions and examples of direct evidence of discrimination that do not match the evidence presently before this court in regard to the Willises' claims).

To survive summary judgment under <u>McDonnell Douglas</u>, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[12]   If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[13]

<u>Davis</u>, 383 F.3d at 317 (citations omitted).   Mr. Willis alleges that Cleco discriminated and retaliated against him by denying him the opportunity to attend diversity conferences; requiring him to write activity reports following conferences; issuing him a written disciplinary warning for sending an email to Cleco employees revealing the health information of a fellow employee's ill son; placing him on a work improvement plan; and terminating his employment. <u>See</u> Record Documents 1 and 59.   Mrs. Willis alleges that Cleco discriminated and retaliated against her by suspending her for five days without pay.   <u>See</u> Record Documents 1 and 56.

---

[12]"This burden on the employer is only one of production, not persuasion, involving no credibility assessments." <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000).

[13]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." <u>Crawford v. Formosa Plastics Corp.</u>, 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

18

### 1.    Race Discrimination.

As noted above, the court must first consider whether the plaintiff has established a prima facie case of discrimination. See id. Under this test, a plaintiff must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  The parties do not dispute the first two elements.  Mr. and Mrs. Willis have failed to demonstrate a prima facie case of race discrimination, however, on one or more of the other elements.

### a.    Similarly Situated Persons.

Mr. Willis's wrongful termination claim and Mrs. Willis's wrongful suspension claim fail because they have not established that they were treated less favorably than other similarly situated persons.  A plaintiff must establish that he was treated less favorably than other employees outside the protected group "under nearly identical circumstances."  See Lee v. Kan. City S. Ry., 574 F.3d 253, 260 (5th Cir. 2009).  "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too

19

remote in time from that taken against the plaintiff generally will not be deemed similarly situated." Id. Significantly, "[t]he plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." Id.

### i.    Mr. Willis's Wrongful Termination Claim.

Mr. Willis identifies a number of comparators, none of whom are similarly situated to him. First, Mr. Willis names Richard Sharp, Rebekah Spring, Danny McDaniel, and David Debona, all of whom allegedly threatened to fire employees for not doing their job or following Cleco policy. See Record 35, Deposition of Mr. Willis at 124-25, 127-31, 189-92. In its motion, Cleco argues that these four persons are not similarly situated because their conduct is not "nearly identical" to Mr. Willis's conduct.[14] See Record Document 35 at 14. According to Cleco, Mr. Willis was fired for revealing information to a non-Cleco employee, making racially inappropriate and intimidating comments to a co-employee, and lying about his behavior when questioned. See id., Affidavit of Taylor at 4, Affidavit of Melancon at 3. He was not fired for threatening the employment of an employee.

---

[14]Cleco also argues that Mr. Willis's allegation that Spring threatened an employee is inaccurate and that three of the persons, Sharp, McDaniel, and DeBona, are not Senior Human Resources Representatives, not in the Human Resources department, and have different supervisors. See Record Document 35 at 15, Affidavit of Taylor at 5.

See id.  The court finds that Cleco has met its summary judgment burden as to these four persons, and Mr. Willis has failed to produce any evidence to the contrary.[15]  Thus, the court finds that Richard Sharp, Rebekah Spring, Danny McDaniel, and David Debona are not similarly situated to Mr. Willis.

Second, Mr. Willis names Matthew Sonnier, Kevin Murray, Terry Bonnette, and John Melancon, all Caucasian, as comparators, alleging that they each made racially inappropriate comments to another employee and were not fired.  See Record Document 59 at 16-17.  Specifically, Mr. Willis claims that Sonnier was suspended for three days for remarks referencing a racially-based incident in Jena, Louisiana, and for allowing a hangman's noose to hang in view of the training facility for more than one year; Murray received no discipline for his role in allowing the noose to hang in the training facility; Melancon was removed from the investigation into the noose incident after asking employees why they were offended by the noose; and Bonnette received a reprimand for telling an employee "you are on my shit list" after the employee filed an EEOC complaint.  See Record Document 59 at 16-17.  These remarks and actions are similar to the alleged

---

[15]Mr. Willis does not address these four comparators in his opposition to the motion for summary judgment.  See Record Document 59.  He does argue, however, that his supervisors "rehearsed" their testimony and changed their story regarding his termination.  He has provided no evidence in support of this allegation and his speculation will not suffice.

21

statements by Mr. Willis in that they were racially insensitive and offensive. According to Cleco, however, Mr. Willis was fired not only for his racially inappropriate comments but also for revealing information to a non-Cleco employee and for lying about his misconduct when questioned.  See Record Document 35, Affidavit of Taylor at 4, Affidavit of Melancon at 3.  None of the four comparators were alleged to have revealed information or lied to management.

Sonnier, Murray, Bonnette, and Melancon differ from Mr. Willis in other respects as well.  None of them hold the same position as Mr. Willis or report to the same supervisor, their job responsibilities vary greatly, and, with the exception of Melancon, they work in different divisions of the company.  See Record Document 35, Deposition of Mr. Willis at 120-121, Affidavit of Taylor at 5; Record Document 37, Affidavit of Bonnette at 1, Affidavit of Murray at 1. Specifically, Sonnier and Murray were trainers at a training facility and were not supervisors; Bonnette is the Manager of Distribution Operations; and Melancon is the General Manager of Human Resources.  See id.  In addition, the alleged conduct by these comparators occurred in 2007 and 2008, while Mr. Willis's conduct took place in 2009.  See id.  For these reasons, the court finds that Sonnier,

22

Murray, Bonnette, and Melancon are not similarly situated to Mr. Willis and Mr. Willis has failed to establish a prima facie case of discriminatory termination.[16]

### ii.   Mrs. Willis's Wrongful Suspension Claim.

Mrs. Willis also identifies a number of comparators but fails to demonstrate that she was "treated less favorably than other similarly situated persons outside the protected group." McCoy, 492 F.3d at 556. Mrs. Willis names Toni Dorn, Gail Washington, Daisy Lemmons, Connie Rosenberg, Crystal Hudson, and Debra Paul as comparators. Tori Dorn and Gail Washington are African-American and not outside the protected group. See Record Document 56, Deposition of Mrs. Willis at 84-85. Daisy Lemmons ("Lemmons") and Connie Rosenberg ("Rosenberg") are Caucasian employees, but they were both demoted as a result of their actions. They were both demoted from supervisory positions to Senior Call Center Specialist and their salaries were reduced $282 per month. See Record Document 36, Disciplinary Memoranda for Lemmons and Rosenberg. Mrs. Willis was only suspended, not demoted. Thus, she was not treated less favorably than Lemmons or Rosenberg.

---

[16]Even if the court found that Mr. Willis had established a prima facie case of race discrimination, summary judgment would nevertheless be appropriate because Mr. Willis has not demonstrated that Cleco's proffered non-discriminatory rationale for firing him was pretextual. See infra Section 3.

23

The court also finds that Crystal Hudson ("Hudson") and Debra Paul ("Paul") are not similarly situated to Mrs. Willis. Hudson was a Lead Customer Systems Coordinator and Paul was a Senior Customer Systems Coordinator. Cleco provides evidence that, in May of 2007, it discovered Hudson and Paul had granted extensions to customers, unrelated to them, even though this was not part of their job description. According to Cleco, Hudson and Paul should have let the Call Center or Customer Service handle the extensions, but their conduct was not otherwise improper. Cleco issued them written warnings. Unlike Hudson and Paul, Mrs. Willis is a Senior Credit Representative in the Customer Services and Credit Department. She has different job responsibilities and authority than Hudson and Paul, and she committed a more serious violation. In addition, her conduct and suspension occurred in October of 2009, more than two years after the incidents with Hudson and Paul. Mrs. Willis admits these facts and does not provide any evidence to support her argument that Hudson and Paul are similarly situated. See Record Document 56, Response to Defendant's Undisputed Facts. Accordingly, the court finds that Mrs. Willis has failed to demonstrate that she was treated less favorably than similarly situated persons and summary judgment is appropriate.

b.      **Adverse Employment Action.**

Mr. Willis's other race discrimination claims fail because the alleged actions

are not "adverse employment actions."[17]  For a Title VII race discrimination claim,

the adverse employment action must be an "ultimate employment decision[] such

as hiring, granting leave, discharging, promoting, or compensating." McCoy, 492

F.3d at 559-60.  Only Mr. Willis's wrongful termination claim meets this standard.

The other alleged discriminatory actions do not.   The alleged prohibition on

attending diversity conferences and the requirement to prepare summary reports

are clearly not ultimate employment actions.  The written disciplinary warning and

the work improvement plan are also not ultimate employment actions, as they did

not affect Mr. Willis's position within the company or his compensation.[18]   See

---

[17]It is unclear whether Mr. Willis responded to Cleco's argument that his alleged discriminatory actions were not adverse employment actions for a race discrimination claim.  In his opposition, Mr. Willis only addresses whether these actions are adverse employment actions under the framework and standards for a retaliation claim, not a discrimination claim.  See Record Document 59 at 12-13.

[18]With regard to the written warning following the email, Mr. Willis has also not shown that similarly-situated persons outside of his protected class were treated differently.  Mr. Willis alleges that a Caucasian woman, Shannon Harvey ("Harvey"), sent a similar email about a co-worker, Arnita Alexander ("Alexander"), and no disciplinary action was taken.  See Record Document 5 at 14.  He admits in his deposition, however, that he does not know who Harvey sent the email to, whether Alexander complained about the email, or whether management was even aware that Harvey sent the email.  See Record Document 35, Deposition of Mr. Willis at 166-168; Record Document 73.

Record Document 1 and 5.  Thus, Mr. Willis's other race discrimination claims fail on this prong and summary judgment is appropriate.

### 2.    Retaliation.

The Willises also allege discriminatory retaliation by Cleco.  To establish a prima facie case of retaliation, a plaintiff must demonstrate that:

> (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).  The parties do not dispute that Mr. Willis participated in a protected activity by reporting the racially-offensive comments by Cleco employees to his supervisors.[19]

### a.    Protected Activity.

Cleco argues that Mrs. Willis did not participate in a protected activity and cannot base her claim on her husband's report to management or his EEOC charge. Cleco's argument is foreclosed by Thompson v. North American Stainless, LP, – U.S. – , 131 S. Ct. 863, 868, 870 (2011), holding that a plaintiff's claim that he was fired in retaliation for his fiancé filing an EEOC charge was cognizable under Title VII and would amount to discriminatory retaliation if proven.

---

[19]Mr. Willis filed a charge with the EEOC, but not until after he was fired.

### b.   Causal Connection.

Mr. Willis has not established a causal connection between his filing a report in 2007 and his termination in 2009. Likewise, Mrs. Willis fails to demonstrate causation between her husband's report in 2007 or his EEOC charge in April of 2009 and her suspension in October of 2009. Although temporal proximity may, in some cases, establish the casual connection for a prima facie case of retaliation, the timing must be very close. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007). "The mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a prima facie case." Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002) (holding that a five month time period between the protected activity and the adverse employment action was insufficient to establish a causal connection).

There is a two year lapse between Mr. Willis's report in 2007, and Cleco's decision to fire him and suspend Mrs. Willis in 2009. There is a six month lapse between Mr. Willis's EEOC charge in April of 2009 and Mrs. Willis's suspension in October of 2009. Although six months is closer in time, it is alone insufficient to establish a causal connection. See Raggs, 278 F.3d at 471. The plaintiffs offer no other evidence of retaliation. Moreover, Mrs. Willis's suspension followed

27

immediately after her supervisor, Carter, discovered she had been working on the Strouds' account. Accordingly, the court finds that Mr. and Mrs. Willis have failed to establish prima facie cases of retaliatory termination and suspension, respectively, and summary judgment is appropriate.[20]

The court finds, however, that genuine disputes of material fact exist as to Mr. Willis's retaliation claim arising from his placement on the work improvement plan. Cleco argues that Mr. Willis fails to show a causal connection between his report to management and his placement on a work improvement plan, and, thus, he has not demonstrated a prima facie case of retaliation. See Record Document 73. Mr. Willis's report and his placement on the work improvement plan were five months apart. While the timing alone may be insufficient to show a causal connection, Cleco raises this argument for the first time in its reply brief. Mr. Willis has not had an opportunity to produce evidence demonstrating a causal connection. Accordingly, the court finds that genuine disputes of material fact exist and summary judgment is denied as to this claim.

---

[20]Even if the court found that the Willises had demonstrated a causal connection, and otherwise established prima facie cases of retaliation, they have failed to demonstrate that Cleco's nonretaliatory reasons for firing him and suspending her were pretextual. See infra Section 3.

28

### c.  Adverse Employment Action.

Mr. Willis's retaliation claims based on Cleco allegedly preventing him from attending diversity conferences and requiring him to write summary reports fail because the alleged actions are not "adverse employment actions."  In a Title VII retaliation claim, the adverse employment action may be any action that "a reasonable employee would have found . . . materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington N. & Sante Fe Ry. Co. v. White</u>, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted). While the employment action need not be an "ultimate" employment decision, it must cause harm or injury to the plaintiff.  <u>See id.</u> (recognizing that Title VII is not "a general civility code for the American workplace").  Whether an employment action is materially adverse is to be judged from the perspective of a reasonable employee in the plaintiff's position. <u>See id.</u> at 69-70, 126 S. Ct. 2415-16.

Mr. Willis's allegations that he was denied the opportunity to attend diversity conferences and required to write summary reports on the conferences are not adverse employment actions.  Mr. Willis has not identified a single diversity conference that Cleco refused to permit him to attend, much less demonstrated

29

harm from this alleged prohibition.[21]  Mr. Willis also provides no evidence supporting his claim that he was required to write reports following the conferences or that a reasonable employee would find writing such reports to be materially adverse.[22]  As to these two claims, Mr. Willis has merely reasserted the conclusory allegations from his complaint.  This will not suffice.  See Ramsey, 286 F.3d at 269 (recognizing that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment).  The court finds that Mr. Willis has failed to meet his summary judgment burden as to these claims and summary judgment is appropriate.

---

[21]In its motion, Cleco provided affidavits from Ed Taylor ("Taylor") and Jeff Hall ("Hall") stating that Mr. Willis was never prohibited from attending a diversity conference and that, despite Mr. Willis's allegation that Taylor prevented him from attending the conferences, Hall was responsible for diversity conferences.  See Record Document 35.  In his opposition, Mr. Willis does not contest this evidence, but merely reasserts his conclusory allegations from his complaint.  In addition, Mr. Willis does not dispute that Cleco permitted and paid for his attendance at the American Association of Blacks in Energy ("AABE"), albeit not a diversity conference.

[22]Cleco offers that Mr. Willis was asked, on one occasion, to write a summary report on the AABE conference as a way to invite Taylor and Melancon to the conference the next year.  See Record Document 73 at 7.  According to Cleco, Taylor did then attend the AABE the following year.  See id.

3.    **Cleco's Nondiscriminatory, Nonretaliatory Rationales.**

As discussed previously, under the McDonnell Douglas framework, if the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the employer to state a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy, 492 F.3d at 557. Once the employer has met its burden of production, "the plaintiff bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." Id. "To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." Id. Additionally, for a retaliation claim, "the plaintiff [must] prove that the protected conduct was a 'but for' cause of the adverse employment decision." Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 129 (5th Cir. 2011).

a.    **Mr. Willis's Wrongful Termination Claim.**

Cleco has argued that Taylor and Melancon found Sylvia's version of the events more credible than Mr. Willis's version, and they fired Mr. Willis for revealing allegations regarding Sylvia to a non-Cleco employee; making inappropriate and offensive racial comments; and lying about his actions when

31

questioned.  <u>See</u> Record Document 35, Affidavit of Taylor at 4, Affidavit of Melancon at 3.  Once Cleco set forth this nondiscriminatory, nonretaliatory rationale, the burden shifted back to Mr. Willis to prove that Cleco's reasons were pretextual.  <u>See</u> <u>McCoy</u>, 492 F.3d at 557.

Mr. Willis has not proven that Cleco's nondiscriminatory and nonretaliatory reasons are a pretext for discrimination or retaliation.  Instead, he has attempted to demonstrate that Sylvia's allegations were untrue.  However, in cases where an employer terminates an employee based on the complaints of a co-employee,

> [T]he validity of the initial complaint is not the central issue because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee.  The real issue is whether the employer **reasonably believed** the employee's allegation and acted on it in **good faith**, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal.  Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.

<u>Waggoner v. City of Garland, Tex.</u>, 987 F.2d 1160, 1165 (5th Cir. 1993) (emphasis added).  Thus, Mr. Willis's argument that he is innocent is irrelevant.  Mr. Willis was required to produce evidence demonstrating that Cleco did not in good faith believe Sylvia's allegations, but relied on them in a bad faith pretext to discriminate or retaliate against him based on his race.  Mr. Willis, however, offers

only unsupported speculation that Cleco changed its rationale for firing him. He offers no summary judgment evidence to show that Cleco acted in bad faith. Cleco, on the other hand, has demonstrated that it acted in good faith. Cleco offers evidence that it confirmed the events before firing Mr. Willis by speaking with Phillips and reviewing Sylvia's phone log and records. The court finds that Mr. Willis has failed to demonstrate a genuine issue of fact that Cleco's proffered nondiscriminatory, nonretaliatory reasons for firing him were a pretext for race discrimination or retaliation. Additionally, he has not shown that his report to management was the "but for" cause for his termination. See Hernandez, 641 F.3d 118 at 129. Accordingly, summary judgment on Mr. Willis's discriminatory and retaliatory termination claim is granted.

### b.    Mr. Willis's Disciplinary Warning Claim.

Mr. Willis contends that Cleco retaliated against him by issuing him a written disciplinary warning.[23] Cleco gave him the warning for sending an email to Cleco employees revealing the health information of a fellow employee's ill son. Cleco does not dispute that Mr. Willis has established a prima facie case of retaliation. Cleco argues, for the first time in its reply brief, that "Mr. Willis is

---

[23]Mr. Willis also alleges a discrimination claim on this basis. The court dismissed his discrimination claim, because he failed to show the warning was an adverse employment action and, therefore, did not establish a prima facie case of discrimination.

unable to dispute the material facts surrounding the disciplinary action or to rebut Cleco's legitimate, non-discriminatory/retaliatory explanation for the same." Record Document 73 at 9.   However, because Cleco did not produce its nonretaliatory rationale until its reply brief, Willis has not had an opportunity to rebut the proffered reasons and demonstrate pretext.   Accordingly, the court finds that genuine disputes of material fact exist and summary judgment is denied as to this claim.

### c.   Mrs. Willis's Suspension Claim.

Cleco argues that it suspended Mrs. Willis for violating company policy by working on the account of her tenant where she was listed as the landlord and by taking her tenant off the disconnection list twice without requiring payment.   See Record Document 36, Suspension Memo of Mrs. Willis.   Once Cleco set forth this nondiscriminatory, nonretaliatory rationale, the burden shifted back to Mrs. Willis to prove that Cleco's reasons were pretextual.   See McCoy, 492 F.3d at 557.

Mrs. Willis has not proven that Cleco's nondiscriminatory and nonretaliatory reasons are a pretext for discrimination or retaliation.   She admits that she worked on the Strouds' account, on which she was listed as the landlord, but argues that her actions did not violate company policy because the account was not her own account or the account of a relative.   However, even if Cleco arrived at

the wrong conclusion, and Mrs. Willis did not violate the policy, this does not prove Cleco suspended her for retaliatory or discriminatory reasons. <u>See</u> <u>Waggoner</u>, 987 F.2d at 1165 (holding that the "real issue" is whether the employer acted in good faith); <u>Nix v. WLCY Radio/Rahall Commc'ns.</u>, 738 F.2d 1181, 1187 (11th Cir. 1984) (recognizing that "[t]he employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). Mrs. Willis has not provided any competent summary judgment evidence suggesting that Cleco acted in bad faith or its decision to suspend her was motivated by race. Additionally, she has not shown that either Mr. Willis's report to management or his EEOC charge were the "but for" cause for her suspension. <u>See</u> <u>Hernandez</u>, 641 F.3d 118 at 129. Accordingly, summary judgment for Cleco is warranted.

**D.    Intentional Infliction Of Emotional Distress.**

In its motions for summary judgment, Cleco insists the Willises cannot recover on claims for intentional infliction of emotional distress. <u>See</u> Record Documents 35 and 36. It does not appear that the Willises have stated claims for intentional infliction of emotional distress under Louisiana law, although they do claim **damages** for emotional pain and distress. <u>See</u> Record Document 5 at 16, 50 and 53. To the extent that the complaint included claims for intentional infliction

35

of emotional distress, those claims must be dismissed. The Willises' oppositions include no argument, much less evidence, in support of such a claim. <u>See</u> Record Document 56 and 59. Therefore, to the extent the Willises allege claims for intentional infliction of emotional distress, Cleco's motions for summary judgment are granted.

### III. CONCLUSION

Based on the foregoing analysis, Cleco's motions for summary judgment (Record Documents 35 and 36) are **GRANTED** in part and **DENIED** in part. The court finds there is no genuine dispute as to any material fact with regard to Mr. Willis's discrimination claims based on his termination, bonus, diversity conferences, summary reports, written disciplinary warning, or work improvement plan. Accordingly, the motion for summary judgment (Record Document 35) is **GRANTED** as to these claims. The motion is further **GRANTED** as to Mr. Willis's retaliation claims based on his termination, bonus, diversity conferences, and summary reports. Accordingly, these claims are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to his retaliation claims based on the written disciplinary warning and the work improvement plan.

The court also finds there is no genuine dispute with respect to Mrs. Willis's discrimination and retaliation claims based on her suspension, and Cleco's motion

for summary judgment (Record Document 36) is **GRANTED** as to these claims. The motion is further **GRANTED** as to Mrs. Willis's state law failure to promote claims and her section 1981 failure to promote claim arising from 2004, as these claims are untimely.   Accordingly, these claims are **DISMISSED WITH PREJUDICE**.  The motion is also **GRANTED** with respect to Mrs. Willis's Title VII claims, which are **DISMISSED WITHOUT PREJUDICE**.  The motion is **DENIED** as to Mrs. Willis's section 1981 failure to promote claims arising from 2005 and 2007.

To the extent that the Willises allege state law claims for intentional infliction of emotional distress, Cleco's motions for summary judgment (Record Documents 35 and 36) are **GRANTED** as to these claims and these claims are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 21st day of September, 2011.

JUDGE TOM STAGG