U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 20 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

JENNIFER HILL

versus

CIVIL ACTION NO. 11-1700
JUDGE TOM STAGG

CLECO CORPORATION

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the

defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims

alleged by the plaintiff, Jennifer Hill ("Hill"). See Record Document 124. Based on

the following, Cleco's second motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Hill, along with twelve other current and former African-American employees

of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and

retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the

United States Code, the Louisiana Employment Discrimination Law, and the

---

[1]Much of the background is adopted from the court's previous summary
judgment ruling. See Record Document 111.

Louisiana Commission on Human Rights. See Record Documents 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to the plaintiffs, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Hill, the court dismissed her federal and state law claims arising out of the Cleco's failure to promote her in 2009 and her state law claim arising out of Cleco's failure to promote her in 2008. The court also dismissed her Title VII claims and intentional infliction of emotional distress claim. See Record Document 112. The court now addresses Hill's remaining 2008 failure to promote and hostile work environment claims brought pursuant to 42 U.S.C. § 1981.

Hill is a Senior Information Technology ("IT") Applications Analyst/ Programmer in the Application Services Division of the Technology and Corporate Services Department at Cleco. See Record Document 124, Ex. A at 24. The Application Services Division is separated into three teams, with each team supervised by a Lead IT Analyst. See id., Ex. A at 22, 27. The Lead IT Analyst reports to the Manager of Application Services, who answers to the General Manager of the Technology and Corporate Services Department. See id., Ex. A at 67. In April or May of 2008, Hill applied for the position of General Manager of Technology and Corporate Services. See id., Ex. A at 60-61. Troy West ("West") was selected for the

position instead. Hill alleges that Cleco refused to hire her for the position because of her race. See Record Documents 1 and 5.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should

---

[2] The court notes that amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

The Fifth Circuit has cautioned that "conclusory allegations, speculation, and

unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a

motion for summary judgment.  Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir.

2002).

## B.    Failure To Promote In 2008.

Hill alleges that Cleco discriminated against her by refusing to promote her to

the position of General Manager of Technology and Corporate Services in 2008.

Cleco argues that her claim has prescribed under Louisiana's one-year prescriptive

period.  Hill maintains that her claim is timely.

### 1.    Statute Of Limitations.

Section 1981 does not contain a statute of limitations.  See Jones v. R.R.

Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004).  When a

federal statute does not contain a statute of limitations, courts should apply "the most

appropriate or analogous state statute of limitations."  Id.  Under Louisiana law, "[a]

section 1981 claim is best characterized as a tort . . . and is, therefore, governed by

the one-year prescriptive period for delictual actions dictated by [Louisiana Civil

Code article] 3492."  Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985).

However, for actions arising under federal statutes enacted after December 1, 1990,

4

courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to

"arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377.  As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996).  If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

The court must determine whether a promotion from Hill's position as a Senior IT Applications Analyst to General Manager of Technology and Corporate Services

would have resulted in substantial changes to Hill's duties, salary, and benefits. Hill's duties as a Senior IT Analyst included, inter alia, coordinating with clients to determine priorities for problems and enhancements, developing a broad knowledge of business units and core processes, and interfacing with employees in Cleco's financial departments to troubleshoot applications issues and to revise and/or add functionality to software components, such as PeopleSoft, through applications programming. See Record Document 124, Exs. A at 20, 21; B-1; C at ¶ 3. This did not include any supervisory authority. See id., Ex. C at ¶ 3. The General Manager of Technology and Corporate Services position had broad supervisory responsibilities with three managers, three lead positions, twenty Applications Systems Analyst/Programmer positions, and four other employees reporting to the position at that time. The position was responsible for all IT functions at Cleco. Specific duties included, inter alia, the following: developing strategic, operational, and project plans for Cleco's entire line of business that would align current and future needs; managing resources necessary to implement these plans; and planning for new and anticipated technology infrastructure developments to meet business needs. See id. at ¶ 4. Regarding salary and benefits, if promoted, Hill's salary would have increased from $75,470 to between approximately $120,000 and $133,000. See id., Ex. B at ¶ 3. Additionally, Hill would have been eligible for bonuses between $34,950 and

$38,736 in 2008 and between $37,464 and $41,523 in 2009. See id., Ex. J at ¶¶ 1-3.

The differences between Hill's position as a Senior IT Applications Analyst and the General Manager position are substantial. The promotion would have been from an operational position with no supervisory authority to a strategic position with broad supervisory authority. Additionally, the promotion would have resulted in Hill nearly doubling her salary. Based upon the aforementioned facts, the promotion would have resulted in a new and distinct relation between Hill and Cleco. Hill's only argument in rebuttal is that her claims were made possible by the amendments to section 1981 and, therefore, are subject to the four-year statute of limitations. The only underlying fact that she disputes is the General Manager's salary and benefits. In support, she cites to her own declaration at page twenty-one; however, there is no page twenty-one to her declaration. Hill has only presented conclusory allegations and unsubstantiated assertions to support the timeliness of her claim. This does not create a genuine dispute of material fact. Accordingly, Hill's claim arises under section 1981 prior to the 1991 amendments, and as a result, her claim is subject to Louisiana's one-year prescriptive period.

The General Manager position was filled on May 3, 2008. See id., Ex. C at ¶ 9. Hill filed her complaint on December 11, 2009, which is more than one year after her claim arose. As a result, Hill's 2008 failure to promote claim is untimely.

8

## 2. Merits.

Assuming, arguendo, that Hill had filed her claim in a timely fashion, her claim would still fail on the merits. Hill's claims of employment discrimination brought pursuant to section 1981 are analyzed under the same standards as Title VII claims. See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007). "An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005). For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis. See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[3]

---

[3]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

Davis, 383 F.3d at 317 (citations omitted).

Hill denies Cleco's assertion that she does not have direct evidence of racial discrimination and merely instructs the court to see her statement of material facts for support. See Record Document 131, Memorandum in Opposition at 6. If Hill is referring to Plaintiff's Exhibit E, it contains printed emails regarding individuals who expressed interest in certain promotional opportunities within Cleco. Copies of these emails contain handwritten notes indicating a candidate's race, sex, and age. However nowhere in Exhibit E is Hill mentioned. This is not direct evidence. "Direct evidence is evidence which if believed, proves the facts without inference or presumption." Jones, 427 F.3d at 992. This is quintessential circumstantial evidence and has no relevance to any of Hill's claims. The court also finds it worthy to note that despite Hill's contention that she has produced direct evidence, she proceeds to make her case under the McDonnell Douglas framework which is the test used for circumstantial evidence. Accordingly, the court will conduct its analysis under McDonnell Douglas.

Cleco argues that even if Hill can establish a prima facie case, her claim fails on the issue of pretext. Hill and seven other employees applied for the promotion to the General Manager of Technology and Corporate Services position. See Record Document 124, Ex. C at ¶ 4. George Bausewine ("Bausewine"), Cleco's Senior Vice

President of Corporate Services at the time, interviewed all but one of the applicants and selected West for the position. Bausewine claims that he selected West for the following reasons: West had been employed with Cleco longer than Hill; West previously held a management position, Manager of Telecommunications, unlike Hill; West had been more widely exposed to other areas of the company; and West had a more comprehensive understanding of the position's role within Cleco. Additionally, Bausewine states that he found West to be more conversant than Hill regarding how he would manage functional areas such as applications, network/facilities, and telecommunications. He did not believe that Hill's interview indicated the same depth and breadth of practical knowledge as West. See id. at ¶¶ 4-6.

Cleco has presented its legitimate, nondiscriminatory reasons for not promoting Hill to the General Manager position; now the burden shifts to Hill to demonstrate that Cleco's legitimate reasons were pretextual. A plaintiff can show pretext by demonstrating that she was "'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) (quoting EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995)). The plaintiff must submit evidence establishing that "no reasonable person, in the exercise of impartial judgment, could have chosen

the candidate selected over the plaintiff for the job in question." Id. at 923 (quoting

Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001)). "This

evidence must be more than merely subjective and speculative." Nichols v. Loral

Vought Sys. Corp., 81 F.3 38, 42 (5th Cir. 1996).

Hill presents a litany of assertions to show pretext, none of which have merit.

She argues that West had no experience in technology and his experience was limited

to telecommunications. The court fails to see how this assertion is relevant; nor does

the court understand what Hill means by "no experience in 'Technology'" without

further explanation. Record Document 131, Memorandum In Opposition at 7. She

also attempts to show that Cleco's reasons are unworthy of credence by alleging that

Cleco stated that managerial expertise was a requirement for the position when, in

fact, it was not. However, at no time did Cleco state that managerial expertise was

required. Bausewine merely stated that West's prior managerial experience factored

into his decision.

Hill additionally contends that she has established pretext through the

presentation of direct evidence that shows it is a common practice for Cleco to

indicate age, race, and sex of candidates prior to interviews. There are several issues

that the court needs to address regarding this argument. First, the court has already

explained that this evidence is not direct but circumstantial. Second, the evidence is

12

irrelevant to Hill's failure to promote claim. Not once is Hill or any position for which she applied mentioned on any of the emails or forms. Third, the argument is erroneous. Obviously, the handwritten notes would not have been on the emails before they were actually sent. Regardless, Felice Burton ("Burton"), Cleco's Employment Coordinator, stated in her declaration that, once a job posting closed, she would draft, sign, and send an email to the hiring supervisors indicating the names of the individuals who applied. See Record Document 124, Ex. H at 2. A copy of that email would then be placed in the job log. After a selection was made, a panel would review information regarding the application process which included among other things each candidate's race, sex, and age. Sometimes this information would be typed on a separate sheet of paper and at other times Burton would write the information next to the candidate's name on a copy of the email previously mentioned. See id.

Other assertions presented by Hill include, inter alia, that her background and experience exceeded the prerequisites for the General Manager position. This does not satisfy her burden at summary judgment. She must show that no reasonable person would have selected West over her for the position. Hill has clearly failed to carry this burden.

13

Hill has failed to demonstrate that Cleco's proffered nondiscriminatory reasons for selecting West over her were pretextual. Accordingly, her failure to promote claim arising out of the General Manager, Technology and Corporate Services position must be dismissed.

## C.   Hostile Work Environment.

In order to establish a hostile working environment claim, Hill must prove that:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations omitted). "[S]imple teasing, . . . offhand comments, and isolated incidents will not

14

amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998). "The plaintiff bears the burden of showing that [her] employer failed to take effective action." Skidmore v. Precision Printing and Packaging, Inc., 188 F.3d 606, 616 (5 th Cir. 1999).

To support her hostile work environment claim, Hill spends approximately four and a half pages of her brief mentioning miscellaneous allegations of racism at Cleco, although, the great majority of them do not relate to Hill. She mentions that certain individuals within Cleco were well-known racists who made it a practice not to promote African-Americans. She also asserts that other African-American Cleco employees were subjected to being called racial epithets and harassed based upon their race. These allegations, however, are either conclusory statements of racial discrimination, inadmissible hearsay, unsubstantiated assertions, or statements that do not relate personally to Hill. As she was not subjected to any of this alleged conduct, the allegations do not support her hostile work environment claim.

Of the few allegations that are relevant, she claims that she was exposed to a "racist noose" displayed at the Crowley, Louisiana, training center. She further claims that she found the noose and was frightened by it. However, the mere presence of a noose, without more, is insufficient to demonstrate a hostile work

15

environment.  <u>See</u> <u>Davis v. Dolet Hills Lignite Co., L.L.C.</u>, 2008 WL 5483105, at *7 (W.D. La. 2008).   Notwithstanding being questioned extensively in her second deposition about the noose incident, she could not give a detailed account of the facts surrounding the noose.  <u>See</u> Record Document 124, Ex. 37-43.  Furthermore, while claiming the noose frightened her, she has failed to demonstrate how it negatively impacted her ability to work and succeed at Cleco.  As for any remaining allegations, the court does not find that taken together they rise to a severe or pervasive level required for a hostile environment claim.   Accordingly, Hill's hostile work environment claim must be dismissed.

### III.  CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 124) is **GRANTED**.  The court finds there is no genuine dispute as to any material fact with regard to any of Hill's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 20th day of February, 2013.



JUDGE TOM STAGG

16